NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2426
     Facsimile:  (213) 894-0142
     E-mail:   Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | NO. CV 20-09714 |
|---|---|
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. § 981(a)(1)(C) |
| 300,901 TETHER VIRTUAL CURRENCY, | [U.S.S.S.] |
| Defendant. | |

The United States of America brings this claim against the defendant 300,901 Tether virtual currency, and alleges as follows:

**JURISDICTION AND VENUE**

1. This is a civil forfeiture action brought pursuant to 18 U.S.C. §§ 981 (a)(1)(C).

2. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this District pursuant to 28 U.S.C. § 1395(a).

**PERSONS AND ENTITIES**

4. The plaintiff is the United States of America (the "plaintiff" or the "government").

5. The defendant is 300,901 Tether virtual currency (the "Defendant Currency"), seized by agents of the United States Secret Service ("USSS") on or about July 7, 2020, pursuant to a seizure warrant issued by the Hon. Pedro Castillo, United States Magistrate Judge.

6. The Defendant Currency is currently in the custody of the United States Secret Service, where it shall remain subject to this Court's jurisdiction pending this action.

7. The interests of Shixuan Cai, Lin Jian Chen and "Kamil" (real name, address, and identity unknown, as described herein) may be adversely affected by these proceedings.

**EVIDENCE SUPPORTING FORFEITURE**

*Background on Virtual Currency*

8. Virtual currency (also known as cryptocurrency or digital currency)[1] is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e., currency created and regulated by a government). Virtual currencies exhibit properties similar to other currencies, but do not have a physical form, existing entirely on the internet. Virtual currency is not issued by any government or bank (in contrast with conventional currencies) and is instead generated and controlled through computer

---

[1] For purposes of this complaint, the terms "digital currency," "cryptocurrency," and "virtual currency" address the same concept.

software operating on a decentralized peer-to-peer network. The use of virtual currency is legal in the United States and it may be exchanged for goods or services or otherwise utilized in legitimate financial transactions. However, it is often used for conducting illegal transactions or to conceal or disguise the true nature, source, location, ownership or control of illegally obtained proceeds.

9. A virtual currency exchange (an "exchange") is a business that allows customers to trade digital currencies for other virtual or fiat currencies. An exchange can be a brick and mortar business, or strictly online. Both types of exchangers accept a wide variety of virtual currencies, and exchange them for fiat and traditional payment methods, other virtual currencies, or facilitate transfers between digital currency owners.

10. Tokens are a form of digital asset that often function similarly to virtual currency. Tokens are generally created by an issuing company and then used like currency by and within companies (including but not limited to the issuer), but are generally distinct from other blockchain-based cryptocurrencies such as Bitcoin.[2] Digital tokens are often issued by companies attempting to launch a new digital product or digital service, where investors purchase tokens for cash and expect that they will exchange these tokens at a

---

[2] "Blockchain" is the name for the system by which virtual currency transactions and exchanges are recorded. It consists of a growing list of records, called blocks, that are linked using cryptography. It generates a decentralized, publicly-available digital ledger that records transactions across many computers in a way that prevents retroactive alteration without additional changes to all successive blocks and the consent of the network. Blockchain recordation provides high security by design, as transactions are verified with advanced cryptography and spread across many computers in a peer-to-peer network or distributed ledger.

later date for greater value if the issuer is successful. While tokens can be used as a limited form of payment, these tokens may remain the property of the issuer until a token is exchanged for another asset, which may be goods, services, or other virtual currency. In this way, a token may be analogized to a voucher or I-O-U, in that they are not specifically a currency, but represent value and may be exchanged at that value. Many tokens can be bought and transferred within certain exchangers.

11. One type of token is "Tether," issued by Tether Limited. Tether is a decentralized, peer-to-peer form of virtual currency having no association with any bank or government. Users purchase Tether tokens, which are stored in a user's digital or cryptocurrency wallet (a "wallet").

12. A wallet is identified by a unique electronic address that essentially stores the access code that allows an individual to conduct transactions on the public ledger. To access a wallet on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address can be analogized to an account number, while the private address is similar to a password used to access that account. Even though the public addresses of those engaging in digital currency transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public address are not necessarily public. If a specific, identifiable individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity. However, many digital transactions are described as "pseudonymous" because they are partially or completely anonymous. Most individuals are identified

when they use a virtual currency exchanger to make a transaction between virtual currency and fiat, or through digital currency exchangers that voluntarily or through legal order, cooperate with law enforcement.

*Evidence Supporting Forfeiture*

13. On or about February 25, 2020, at approximately 6:36 AM +UTC, Shixuan Cai ("Cai") purchased 300,900 Tether tokens through the Binance exchange (the "Tether Purchase").[3]

14. Cai directed the Tether Purchase into a wallet with a public address ending '517c (the "Victim Wallet"). Cai and his business partner Lin Jian Chen ("Chen") controlled the Victim Wallet and were the only persons with authorized access to the Victim Wallet.

15. Roughly four minutes after the Tether Purchase, at approximately 06:40 AM +UTC, the Tether Purchase, plus one additional Tether token already in the Victim Wallet (collectively, the "Victim Funds"), were transferred from the Victim Wallet to a wallet not controlled by either Cai or Chen, with a public address ending in '8869 (the "'8869 Wallet"). Neither Cai nor Chen authorized or executed this transfer of the Victim Funds.

16. Approximately ten hours later, on or about February 25, 2020, at 04:17:38 PM +UTC, the Victim Funds were split, with 200,600 Tether transferred from the '8869 Wallet to another wallet not controlled by Cai or Chen, with public address ending '44c2 (the "'44c2 Wallet"). Neither Cai nor Chen authorized or executed this

---

[3] Tether is commonly known as a "stablecoin," meaning that Tether tokens ordinarily hold a static value roughly equal to one United States dollar. As such, the total value of the Tether Purchase was approximately $300,900.

transfer. The residual 100,301 of the Victim Funds remained in the '8869 Wallet.

17. The next day, February 26, 2020, Cai discovered that a portion of the Victim Funds had been transferred from the Victim Wallet to the '8869 Wallet without his authorization.

18. Cai contacted his partner, Chen, who was the only other person with authorized access to the Victim Wallet. Cai inquired whether Chen had authorized the transfer of the Victim Funds to the '8869 Wallet, and Chen denied that he (Chen) had made any recent transactions to or from the Victim Wallet. Chen stated that he did not know who had transferred the Victim Funds from the Victim Wallet to the '8869 Wallet.

19. Chen informed Cai that he (Chen) had recorded the private key for the Victim Wallet in his Evernote[4] account, using an application on his smartphone.

20. Chen reviewed his Evernote account and discovered that it had been accessed without his permission from several unknown IP addresses. As a result, persons unknown had been able to access the private key to the Victim Wallet recorded in Chen's Evernote. With this private key, these intruders gained control over the Victim Wallet and the ability to transfer the Victim Funds without the knowledge or authorization of Cai or Chen. These intrusions occurred between January 28, 2020 and February 5, 2020, and it appeared that

---

[4] Evernote is an application used for note taking, organizing, task management, and archiving.

the intruders had used virtual private networks to disguise their location.[5]

21. Based on this information, Cai believed that the person or persons who had accessed Chen's Evernote account without authorization had used the private key found in Chen's Evernote account to control the Victim Wallet and transfer the Victim Funds to the '8869 Wallet without authorization.

22. On or about April 9, 2020, Cai reported the theft of the Victim Funds to the Los Angeles Police Department. Cai also notified Tether Limited of the unauthorized transfer of the Cai Funds, and was informed that Tether Limited would temporarily restrict any transfers of the Victim Funds pending an investigation.

23. On or about April 18, 2020, Special Agent Patrick Leighton ("SA Leighton") of the USSS was contacted by a representative of Tether Limited, who informed SA Leighton that an unidentified individual was seeking to lift the restriction on the Victim Funds in order to convert them to another form of virtual currency. SA Leighton requested that Tether Limited pass his contact information to the person seeking to release the Victim Funds.

---

[5] It is common for computer hackers to infiltrate computers or mobile telephones of unsuspecting parties through the use of a virtual private network (or "VPN"). This technique allows criminals to effectively hide their own IP address, making it appear as though they conducted their intrusion from locations throughout the world. Although using a VPN is legal, criminals commonly use them to create additional layers of anonymity while committing cybercrimes. They do this as a tactic to throw off law enforcement and prevent experts from tracking the original IP address of the unauthorized actor.

24. On or about April 18, 2020, SA Leighton was contacted electronically by an individual who identified himself only as "Kamil," using the email address "qlYyq2t5iKIbBfxu@protonmail.ch."[6]

25. Kamil stated that he controlled both the '8869 and the '44c2 Wallets, and that he wanted Tether Limited to lift the freeze on the Victim Funds. Kamil claimed that an unidentified business partner had transferred the Victim Funds to him and asked him to use the Victim Funds to buy Ethereum[7] on the Kyber[8] network. Kamil claimed that the unidentified partner received the Victim Funds from an undisclosed person in China who asked Kamil to handle the transfer of the Victim Funds because he (the person in China) was not familiar with digital currency. Kamil stated that he intended to split the Victim Funds into equal amounts in three wallets, and that he would receive 15% of the Victim Funds for conducting these intended transactions on behalf of his partner. Kamil would not provide any identifying information for his purported partner, and Kamil claimed that he had deleted all of his partner's information.

26. On or about May 21, 2020, Magistrate Judge Castillo issued a seizure warrant (the "Warrant") for the Victim Funds and, on June 25, 2020, issued an order extending the time for the USSS to execute the Warrant.

---

[6] Protonmail is an encrypted email service often used by criminals to hide their true identity by creating anonymous email accounts.

[7] Ethereum is a type of digital currency, considered the second most popular in the world (behind Bitcoin).

[8] Kyber is a decentralized platform used to exchange Ethereum and other tokens.

27. On July 7, 2020, Tether Limited lifted the freeze on the Victim Funds and the USSS executed the Warrant by transferring the Victim Funds into a wallet controlled by the government.

//

//

//

**FIRST CLAIM FOR RELIEF**

18 U.S.C. § 981(a)(1)(C)

28. Based on the facts set out above, Plaintiff alleges that the Defendant Currency constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1030 (Fraud and related activity in connection with computers). The Defendant Currency is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the Defendant Currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 22, 2020

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/ DRAFT
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## VERIFICATION

I, PATRICK LEIGHTON, hereby declare that:

1. I am a Special Agent of the United States Secret Service and the case agent for the forfeiture matter entitled *United States of America v. 300,901 Tether Virtual Currency.*

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed October 22, 2020 in Los Angeles, California.

PATRICK LEIGHTON
Digitally signed by PATRICK LEIGHTON
Date: 2020.10.22 05:37:18 -07'00'

PATRICK LEIGHTON
Special Agent
United States Secret Service